UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, on behalf of UC DAVIS HEALTH SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>STIDHAM TRUCKING INC.; CRAIG C. HANSEN INSURANCE SERVICES, INC.; WORTHINGTON OLSON, INC., dba COBRAHELP; ANTHEM, INC; and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 16-cv-02835-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

In this suit, Plaintiff the Regents of the University of California, on behalf of the UC Davis Medical Center, seeks payment for medical services provided to non-party patient Jack Franklin.[1] Plaintiff alleges that Defendants unlawfully denied Franklin his rights to enroll in health insurance pursuant to the Consolidated Omnibus Budget Reconciliation

---

[1] In its filings, Plaintiff refers to Franklin only as "Mr. F," which it explains in its First Amended Complaint ("FAC") was done "so as to protect the privacy interests of the patient and pursuant to the guidelines of the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 (HIPAA)." FAC, ECF No. 6, ¶ 4. However, entities covered by HIPAA may disclose a patient's name in litigation to obtain payment for services rendered. See 45 C.F.R. § 164.501 (defining "health care operations" as including "legal services"); id. § 164.506(c) (permitting disclosure of "protected health information" for use in "health care operations"). For clarity, and because Franklin's name has already been used openly in several moving papers, the Court refers to Franklin by name.

1

Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161–1168.  Defendants are Franklin's former employer, Stidham Trucking Inc. ("Stidham"); Stidham's insurance broker, Craig C. Hansen Insurance Services, Inc. ("Hansen"); Stidham's COBRA administrator, Worthington Olson, Inc., dba CobraHelp ("CobraHelp"); and Stidham's insurance provider, Anthem, Inc. ("Anthem").  Stidham, CobraHelp, and Anthem now move to dismiss the claims against them.  ECF Nos. 8, 18, 19.  CobraHelp has also moved for sanctions against Plaintiff, ECF No. 9, and Plaintiff has moved for sanctions against CobraHelp for filing that motion, ECF No. 25.  For the following reasons, the motions to dismiss ("MTDs") and CobraHelp's motion for sanctions are GRANTED, and Plaintiff's motion for sanctions is DENIED.[2]

## BACKGROUND[3]

Jack Franklin voluntarily terminated his employment with Stidham on September 26, 2014.  At that time, he received notice that he had 60 days to elect to continue his health benefits under COBRA.  Toward the end of those 60 days, he was in an accident and received treatment at the UC Davis Medical Center for 10 days.  Plaintiff alleges that Franklin was incapacitated for all 10 days he received treatment.

Plaintiff further alleges that Franklin assigned it all his insurance rights upon admission to the UC Davis Medical Center, and that his 10-day incapacitation is grounds for equitable tolling of the 60-day election period provided by COBRA.  Plaintiff contends that equitable tolling required the issuance of a new COBRA notice from the COBRA administrator that would create a new 60-day election period.  On July 11, 2016, Plaintiff's attorney represented to CobraHelp—i.e., the COBRA administrator—that Stidham and Anthem—i.e., the employer and insurance provider—agreed that Franklin

---

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  See E.D. Cal. Local R. 230(g).

[3] Unless otherwise noted, the allegations recounted in this section are drawn directly from Plaintiff's FAC.

2

was entitled to a new election period. Decl. of Kristina Baker, ECF No. 9-3, ¶ 8. Relying on that representation, CobraHelp sent a new COBRA notice via email, to be followed with a mailed hardcopy. Id.

About three hours after CobraHelp sent the new notice by email, CobraHelp emailed Plaintiff's attorney that the unusual nature of the situation led them to decide not to send a hardcopy. Decl. of Heather Underwood, ECF No. 9-4, Ex. 8, at 1. CobraHelp also instructed Plaintiff's attorney to disregard the previous email that contained the new COBRA notice. Id. Plaintiff's attorney then made a number of unsuccessful attempts to convince CobraHelp to mail a new notice. See, e.g., id. Ex. 13, at 1.

Despite the instruction to disregard the emailed notice, Plaintiff completed the election form and returned it to CobraHelp on August 18, 2016. Plaintiff also sent a premium payment on September 30, 2016, to CobraHelp. CobraHelp returned the check uncashed.

Plaintiff then filed the instant suit on December 1, 2016, alleging various state causes of action as well as violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461.[4] Hansen (Stidham's insurance broker) filed an answer, while the other three defendants filed motions to dismiss for failure to state a claim. CobraHelp accompanied its motion to dismiss with a motion for sanctions under Federal Rule of Civil Procedure 11(b)(2), alleging that allegations in Plaintiff's complaint are directly contradicted by email evidence in Plaintiff's possession. In response, Plaintiff filed its own motion for sanctions, alleging that CobraHelp's Rule 11 motion was baseless and intended only to harass.

///
///
///
///

---

[4] COBRA is part of ERISA, adding a requirement that terminated employees be given an opportunity to continue coverage under their former employer's group health insurance. See 29 U.S.C. §§ 1161–1168.

**STANDARDS**

**A.    Motions to Dismiss for Failure to State a Claim**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (citation omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Id. at 555 n.3 (citation omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright & Miller, supra, at 94–95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from

conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**B.      Sanctions Under Rule 11**

Federal Rule of Civil Procedure 11 provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a

5

|   |   |
|---|---|
| 1 | reasonable opportunity for further investigation or discovery . . . . |
| 2 | |

Fed. R. Civ. P. 11. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule . . . ." Id.

Rule 11 "is designed to deter attorneys and unrepresented parties from violating their certification that any pleading, motion[,] or other paper presented to the court is supported by an objectively reasonable legal and factual basis; no showing of bad faith or subjective intent is required." Truesdell v. S. Cal. Permanente Med. Grp., 209 F.R.D. 169, 173–74 (C.D. Cal. 2002). Rather, Rule 11 is governed by an objective standard of reasonableness. See, e.g., Conn v. COS Borjorquez, 967 F.2d 1418, 1420 (9th Cir. 1992). Thus, where a party "pursues causes of action for which there is no legal basis whatsoever," sanctions may be warranted. Bhambra v. True, No. 09-cv-4685-CRB, 2010 WL 1758895, at *3 (N.D. Cal. Apr. 20, 2010).

"[T]he central purpose of Rule 11 is to deter baseless filings." United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 254 (9th Cir. 1992) (alteration in original) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 392 (1990)). "Under the plain language of the rule, when one party files a motion for sanctions, the court must determine whether any provisions of subdivision (b) have been violated." Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994). If Rule 11(b) was violated, the court "may" impose sanctions. Id. "If it decides not to impose sanctions, some reasoned basis for deciding not to do so is required . . . ." Id.

///
///
///
///
///
///

**ANALYSIS**

A. **Motions to Dismiss**

   1. **ERISA Claim**

Part of ERISA, COBRA requires that employees be given an opportunity to continue coverage under their employer's group health insurance when certain qualifying events would result in loss of that insurance. 29 U.S.C. § 1161(a). Termination of employment is among those qualifying events. Id. § 1163(2). COBRA requires notice be given to employees of the right to continued coverage, and employees then have 60 days from the date of notice to elect for continued coverage. Id. §§ 1165(a)(1); 1166(a). Furthermore, § 502(a)(1)(B) of ERISA provides a cause of action for a participant or beneficiary of an ERISA plan "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Id. § 1132(a)(1)(B). Plaintiff's ERISA claim alleges that Defendants denied Franklin the statutory benefits of COBRA by failing to adequately provide him with an opportunity to elect for continued coverage. However, that claim is premised on a misconstruction of equitable tolling, and accordingly fails as a matter of law.

Plaintiff cites two cases in support of its contention that equitable tolling is required under COBRA. In Sirkin v. Phillips Colleges, Inc., 779 F. Supp. 751 (D.N.J. 1991), the court held that "where an insured misses a premium deadline under COBRA due to the insured's incapacity to know of or meet her obligation, the deadline for that premium payment is tolled for a reasonable period of time until the insured or her legally appointed guardian is able to cure the deficiency," id. at 758. Similarly, in Branch v. G. Bernd Co., 955 F.2d 1574 (11th Cir. 1992), the Eleventh Circuit held that the deceased former employee's "60-day election period was tolled from the date of his incapacitation until the date that [his court-appointed estate administrator] was empowered to make the election on [the decedent's] behalf," id. at 1582.

Assuming, without deciding, that equitable tolling of COBRA's 60-day election period is available due to Franklin's incapacity, equitable tolling provides no support for Plaintiff's claims. In the Ninth Circuit, equitable tolling functions as follows: "[T]he . . . clock stops running when extraordinary circumstances first arise, but the clock resumes running once the extraordinary circumstances have ended or when the petitioner ceases to exercise reasonable diligence, whichever occurs earlier." Luna v. Kernan, 784 F.3d 640, 651 (9th Cir. 2015). Here, the alleged extraordinary circumstances—Franklin's incapacitation—ended when he left the UC Davis Medical Center. Thus, taking Plaintiff's allegations as true, the 60-day election period was tolled from the time Franklin was incapacitated until the end of his incapacitation. That is, the election period was tolled for the 10 days Plaintiff was receiving treatment. His election period was, therefore, at most 70 days. Plaintiff only attempted to elect continued coverage under COBRA on August 18, 2016, which is almost two years after Franklin received his COBRA notice.

Plaintiff derides this application of equitable tolling as "some fabricated timing construct[]." Pl.'s Opp'n to CobraHelp's MTD, ECF No. 15, at 8; see also Pl.'s Opp'n to Anthem's MTD, ECF No. 27, at 10; Pl.'s Opp'n to Stidham's MTD, ECF No. 29, at 7. However, this is exactly how equitable tolling functions in the Ninth Circuit. Plaintiff also contests this application of equitable tolling by contending that Franklin (or his representative) needed to be "empowered" to elect COBRA coverage following his incapacitation by a new COBRA notice. See Pl.'s Opp'n to CobraHelp's MTD, at 8; see also Pl.'s Opp'n to Anthem's MTD, at 10; Pl.'s Opp'n to Stidham's MTD, at 7. Plaintiff, however, provides no authority for this contention. Plaintiff's argument consists solely of parroting the language used by the Eleventh Circuit in Branch, divorced from the actual mechanism of equitable tolling. Franklin was "empowered" to elect for continued coverage under COBRA when his incapacitation ended.

Plaintiff's reliance on Branch's "empower" language is doubly misplaced as it indicates that Franklin was likely entitled to no equitable tolling at all. In Branch, the former employee was incapacitated before the end of his 60-day election period and

8

eventually died. 955 F.2d at 1576. The Eleventh Circuit held that the election period therefore tolled until the court appointed an administrator of his estate. Id. at 1582. Here, Plaintiff alleges that Franklin "assigned all his insurance benefits to Plaintiff" upon admission to the UC Davis Medical Center. FAC, ¶ 14. If true, Plaintiff was likely "empowered" to make a COBRA election on Franklin's behalf at that time, and thus there would be no grounds for equitable tolling of the election period while Franklin was incapacitated. Thus, Plaintiff's focus on the "empower" language from Branch is wholly unavailing.

Regardless of whether Franklin was entitled to equitable tolling, it provides no support for Plaintiff's ERISA claim, which fails as a matter of law. Accordingly, Plaintiff's second cause of action against Stidham, CobraHelp, and Anthem is DISMISSED with prejudice.

### 2. State Law Claims

Plaintiff's first, third, fourth, and fifth causes of action are grounded in state law. Plaintiff alleges breach of contract, equitable estoppel, unjust enrichment, and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17204. All of these claims, however, either are preempted by ERISA or otherwise fail as a matter of law.

The scope of ERISA regulation is sweeping. As mentioned above, § 502(a)(1)(B) permits a civil action by a participant or beneficiary of an ERISA plan "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). If a state law action seeks such relief, it must be pursued as a federal claim under ERISA. This is because, as the Supreme Court has recognized, § 502(a) demonstrates Congressional intent to "so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63–64 (1987).

///

Furthermore, under § 514(a), state law claims that "relate to" an ERISA cause of action "conflict" with ERISA and are therefore precluded, even if their effect on ERISA "is only indirect." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990). State tort law and implied contract remedies are therefore conflict preempted even when ERISA does not authorize a similar cause of action. Olson v. Gen. Dynamics Corp., 960 F.2d 1418, 1424 (9th Cir. 1991); see also Aetna Life Ins. Co. v. Bayona, 223 F.3d 1030, 1034 (9th Cir. 2000) ("ERISA preempts common law theories of breach of contract implied in fact, promissory estoppel, estoppel by conduct, fraud and deceit and breach of contract." (quoting Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1095 (9th Cir. 1985))).

Plaintiff's state law claims against Defendants all are premised on Defendants' alleged responsibilities under COBRA, and are therefore preempted. Plaintiff's breach of contract claim is premised on the second COBRA notice CobraHelp sent to Franklin's representative (which it directed Plaintiff to ignore three hours later). It contends that this notice was a contract, which Defendants breached by not providing retroactive health coverage to Franklin. The second COBRA notice also forms the basis of Plaintiff's equitable estoppel and unjust enrichment claims. However, a COBRA notice only advises a qualified beneficiary of his or her rights under COBRA. That is, Plaintiff's breach of contract, equitable estoppel, and unjust enrichment causes of action all seek merely to enforce supposed COBRA rights. Accordingly, Plaintiff's breach of contract, equitable estoppel, and unjust enrichment claims are preempted by ERISA.

Plaintiff's UCL claim is also preempted. The UCL prohibits persons from engaging in "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff's UCL claim is premised on its allegation that "refusing to extend the COBRA election period for [Franklin] . . . is an unfair business practice." FAC, ¶ 62. That is, Plaintiff's UCL claim is based on Defendants' alleged responsibilities imposed by COBRA. It is, therefore, preempted as relating to ERISA.

Plaintiff argues that its claims are not preempted, but instead pleaded in the alternative if it is determined not to be considered "a participant, beneficiary, or fiduciary

of an ERISA plan."  Pl.'s Opp'n to CobraHelp's MTD, at 9; see also Pl.'s Opp'n to Anthem's MTD, ECF No. 27, at 11; Pl.'s Opp'n to Stidham's MTD, ECF No. 29, at 8. Plaintiff appears to argue that if Franklin had no right to a new election period, Defendants nonetheless contracted to provide coverage.  Plaintiff's state law claims, however, still fail as a matter of law.

      Regarding Plaintiff's breach of contract claim, Plaintiff's attempt to disentangle the claim from ERISA to escape preemption is self-contradictory.  At best, the FAC impliedly alleges that a contract was formed when Plaintiff returned the form and attempted to make a premium payment.  See FAC ¶¶ 28–29.  However, Plaintiff's complaint does not allege that the notice presented any independent offer to provide coverage, but only that the second COBRA notice "contained information regarding the right to continue health coverage."  FAC, ¶ 28.  Even if the Court were to generously construe the FAC as alleging CobraHelp offered to create COBRA rights by contract, this is not something CobraHelp had the power to do—an election period runs only "as a result of a qualifying event."  29 U.S.C. § 1161(a); see also id. § 1163 (defining the relevant qualifying events).  Furthermore, even if it could extend such rights by contract, any cause of action related to that contract would be swept up by ERISA preemption as such a contract would make Plaintiff a beneficiary or participant in an ERISA plan.

      Turning to Plaintiff's other state law causes of action, a claim for equitable estoppel requires, among other things, that the defendant acted in a way such that "the party asserting the estoppel . . . reasonably rel[ied] on the conduct to his or her injury." Honig v. S.F. Planning Dep't, 127 Cal. App. 4th 520, 529 (2005).  Plaintiff, however, identifies no injury it suffered as a result of the conduct of any Defendant.  Plaintiff's check was returned to it, and the only supposed injury Plaintiff suffered was a denial of COBRA rights it did not have.  See FAC, ¶¶ 51–52.  Similarly, Plaintiff's unjust enrichment claim fails.  Defendants have not unjustly received any benefit from Plaintiff—Plaintiff only alleges Defendants benefitted from not providing COBRA coverage Plaintiff had no right to.  See FAC, ¶¶ 55–56.  Finally, since Plaintiff's breach of

contract, equitable estoppel, and unjust enrichment claims do not state a cause of action, Plaintiff's dependent UCL claim fails for not identifying any "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200, that would expose Defendants to liability.

Regardless of whether Plaintiff's state law causes of action are preempted by ERISA, they fail as a matter of law. Accordingly, Plaintiff's first, third, fourth, and fifth causes of action against Stidham, CobraHelp, and Anthem are DISMISSED with prejudice.

**B.     Motions for Rule 11 Sanctions**

As described above, "when one party files a motion for sanctions, the court must determine whether any provisions of subdivision (b) [of Rule 11] have been violated." Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994). CobraHelp alleges Plaintiff's attorney violated Rule 11(b) by filing a complaint that she knew was factually baseless. Specifically, CobraHelp contends the following allegations were known by Plaintiff's attorney to be false:

> 20.     On or about July 11, 2016, Defendant, CobraHelp sent a Notice of Right to Elect COBRA Continuation Coverage (Notice) to Mr. F[ranklin] c/o his authorized representative. . . . Plaintiff assumed, in good faith, that the Notice was received as a direct result of the aforementioned written request for reinstatement which resulted from counsel for Plaintiffs request for an extension of the COBRA election period, due to Mr. F[ranklin]'s incapacity.
>
> . . . .
>
> 23.     Any claims of CobraHelp's lack of authorization to send the COBRA Notice were not communicated to Mr. F[ranklin], his Authorized Representative or to Plaintiff at any time before Mr. F[ranklin]'s authorized representative's acceptance and timely and good faith signature and return of the election form, and payment, as required by law.
>
> 24.     Neither Mr. F[ranklin], his authorized representative, nor Plaintiff, had any reason to question the lawfulness or the legitimacy of the Notice since Defendant, CobraHelp, Defendant Stidham's COBRA administrator, previously sent Mr. F[ranklin] the original October 17, 2014 COBRA Notice, in the same format, and the Notice sent in July 2016 contained numerous references to Defendant, Stidham and their health

12

> plan suggesting that the Notice was sent on Stidham's behalf.
>
> 25. Defendants never withdrew the July 11, 2016 COBRA Election, which was sent to Mr. F[ranklin]'s Authorized Representative.

FAC, ¶¶ 20, 23–25; CobraHelp's Mem. of P. & A. in Supp. of Mot. for Sanctions ("CobraHelp's Mot. for Sanctions"), ECF No. 9-1, at 9–10. CobraHelp contends that Plaintiff's attorney "induce[d] CobraHelp to email her a copy of a 'new notice'" "[b]y way of misrepresentations and threats of legal action" and that "CobraHelp notified [Plaintiff's attorney] the 'new notice' was revoked, recalled, null and void, and no new notice would be issued for Franklin." Id. at 2. Accordingly, CobraHelp contends that the identified paragraphs of the FAC are "categorically false" and that "[b]y virtue of [Plaintiff's attorney]'s personal participation in the events" she had "actual knowledge these factual contentions are false." Id. at 3. CobraHelp has also supplied copies of correspondence between Plaintiff's attorney, Defendants, and Defendants' counsel in support. See Decl. of Kristina Baker, ECF No. 9-3; Decl. of Heather Underwood, ECF No. 9-4.

In response, Plaintiff's attorney argues that she had a reasonable belief that the new notice was valid because of its formatting. Pl.'s Opp'n to CobraHelp's Mot. for Sanctions, ECF No. 16, at 13. Furthermore, Plaintiff's attorney contends that the emails CobraHelp characterizes as revoking the new notice merely redirected administrative responsibility to Stidham. Id. at 13–14. Finally, Plaintiff's attorney ascribes improper intent to CobraHelp's motion for sanctions as "a distraction" and "smear campaign against Plaintiff's counsel." Id. at 14. Indeed, Plaintiff filed its own motion for sanctions against CobraHelp on this basis. See Pl.'s Mem. of P. & A. in Supp. of Mot. for Sanctions ("Pl.'s Mot. for Sanctions"), ECF No. 25-1.

Plaintiff's attorney, however, violated Rule 11 in alleging facts she knew to be false. First, CobraHelp has provided evidence that Plaintiff's attorney represented to CobraHelp that "'everything was already approved' by Anthem and Stidham" for Franklin to receive an extended period for COBRA enrollment, and that CobraHelp issued the second notice in reliance of this representation. Decl. of Kristina Baker, ¶ 8. Plaintiff

13

does not dispute this evidence, but only the precise meaning of the email she sent following the phone conversation in which Plaintiff's attorney made this representation. See Pl.'s Opp'n to CobraHelp's Mot. for Sanctions, at 5–6. Nor has Plaintiff presented any evidence that Anthem did in fact approve an extension of Franklin's COBRA election period. Finally, Plaintiff threatened legal action against CobraHelp should it not provide a new notice. See Decl. of Kristina Baker, Ex. 2, at 2 ("Your failure to forward the [new notice] exposes the employer, the TPA and its agents to legal action . . . ."). Thus, the FAC falsely alleges that Plaintiff assumed "in good faith" that the second notice of election issued merely as a result of Stidham's written request for an extension of the COBRA election period. Plaintiff's counsel was well aware that the second election notice issued also as a result of her assurances that Anthem had approved the extension and her threats of legal action (which, as explained above, were based on a wholly inaccurate understanding of the relevant law).

Second, Plaintiff's allegation that CobraHelp had not communicated its lack of authorization to issue a new notice is also false. Plaintiff's attorney was informed on July 11, 2016, by email that authority to approve Franklin's coverage lay with Anthem and Stidham. See Decl. of Kristina Baker, Ex. 2. In that email, CobraHelp states it is "not able to reissue a COBRA Notice and give Mr. Franklin another 60 days to elect COBRA coverage" and that retroactive placement of Franklin on an employer health plan was "something that is between Stidham Trucking Inc. and Anthem." Id. Tellingly, Plaintiff's attorney was advised that authority to approve Franklin's coverage lay with Anthem and Stidham mere hours before the phone conversation in which she represented that she had received both Anthem and Stidham's approval.

Third, Plaintiff's allegation that it did not have "any reason to question the lawfulness or the legitimacy of the Notice" is similarly false. As explained above, Plaintiff's attorney was informed not only that CobraHelp lacked the authority to extend the COBRA election period, but also that the issuance of a new notice resulted from Plaintiff's attorney's representations that Anthem and Stidham had agreed to such an

extension.  Furthermore, the email in which CobraHelp agreed to send a new notice explained that the new notice was provided simply "as a courtesy" and that CobraHelp's duties "were completely fulfilled in September of 2014, by providing timely and accurate COBRA notification to [Franklin]."  Decl. of Kristina Baker, Ex. 2, at 1.  Then, in an email less than three hours later, CobraHelp sent Plaintiff's counsel an email stating that although an emailed copy had already been provided it "w[ould] NOT be issuing the notice with a new election period."  Decl. of Heather Underwood, ECF No. 9-4, Ex. 8, at 1.  It went on to direct Plaintiff's attorney to "disregard the portion of the e-mail response from earlier regarding the new 60 day election period."  Id.

In another email sent about 20 minutes later in response to Plaintiff's counsel requesting to speak with CobraHelp's attorney, CobraHelp went on to state that aspects of the matter "make[] it seem as though something is not right" and explicitly stated that CobraHelp "will not be servicing or facilitating an account for Mr. Franklin and that is final."  Id. Ex. 9, at 1.  About another 20 minutes later, CobraHelp clarified the meaning of the prior emails even further:  "I sent a follow up email today to recall the details of the COBRA notification. . . ."  Id. Ex. 11, at 1.  Plaintiff's counsel also clearly understood the new notice to have been recalled because she continued attempting to convince CobraHelp to send a new notice extending the COBRA election period.  See, e.g., id. Ex. 13, at 1.

About a week and a half later, Stidham's attorney then reconfirmed what had already been communicated to Plaintiff's attorney:  "[W]e will not be issuing a new election letter."  Id. Ex. 15, at 2.  What is more, it explained to Plaintiff's attorney that Stidham could not have alone "b[ound] an insurance company to cover a former employee."  Id. at 1–2.  All of these warnings make it entirely false that Plaintiff did not "ha[ve] any reason to question the lawfulness or the legitimacy of the Notice."  Plaintiff's attorney herself was told numerous times that CobraHelp was uncomfortable with the situation and recalled the emailed notice within hours of it being sent.  Thus, Plaintiff's attorney's protestations that these communications only regarded "CobraHelp s[eeking]

15

to put the administrative responsibilities on the employer," Pl.'s Opp'n to CobraHelp's Mot. for Sanctions, at 13, strain credulity.

Finally, for the same reasons, the fourth paragraph identified by CobraHelp was also known to be false when alleged. Plaintiff's attorney knew that the new election notice was withdrawn after receiving CobraHelp and Stidham's emails indicating as much, and Plaintiff's attorney confirmed her understanding that the notice was withdrawn through her repeated subsequent attempts to have Defendants reissue a new notice.

Because the challenged paragraphs were known by Plaintiff's counsel to be false, Plaintiff's counsel has violated Rule 11 and CobraHelp's motion for sanctions is GRANTED. CobraHelp requests attorney's fees incurred defending Plaintiff's claims, but does not provide any amount of those fees. Accordingly, CobraHelp is ordered to file a statement of attorney's fees incurred to defend this action within 14 days of the date of this order. Further, because CobraHelp's motion is granted and because Plaintiff's motion for sanctions is wholly premised on the contention that CobraHelp's motion was baseless and intended only to harass, Plaintiff's motion for sanctions is DENIED.

## CONCLUSION

For the reasons provided above, Stidam's, CobraHelp's, and Anthem's Motions to Dismiss, ECF Nos. 8, 18, and 19, are GRANTED. All causes of action against those three defendants are DISMISSED with prejudice. Furthermore, CobraHelp's Motion for Sanctions, ECF No. 9, is GRANTED and CobraHelp is ordered to file a statement of attorney's fees incurred to defend this action within 14 days of the date of this order.

///
///
///
///
///

Plaintiff may file an objection to the amount requested within seven (7) days of the filing of CobraHelp's statement.  Plaintiff's Motion for Sanctions, ECF No. 25, is DENIED.

    IT IS SO ORDERED.

Dated:  August 31, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE